## PAUL B. RING.

### *v.*

## JAMES BILLINGS *et al.*

1.  VENDOR AND PURCHASER—*reservation by the former—what constitutes.*
A party sold his interest in a tract of land, the legal title of which was in
another, and an agreement in writing was entered into between the vendor
and purchaser, by the terms of which the former was to have a certain
time in which to remove some wine plants growing upon the premises.
The person holding the legal title was authorized verbally by the vendor to
convey to the purchaser on the payment of a certain sum of money to
which the land was subject. The payment being made, the holder of the
legal title, at the request of the purchaser, conveyed the land to the wife of
the latter, the deed containing no clause of reservation of the wine plants:
*Held*, that the written reservation was operative according to its terms, and
secured to the vendor the right to remove the plants within the time agreed
upon. The fact that the deed contained no reservation was immaterial, as
it was not made by the vendor, nor did he authorize it to be made without
the reservation.

2.  *Quære*, whether the vendor, in such case, could set up his written
reservation against a subsequent deed made by himself not containing a
reservation.

3.  SAME—*where the conveyance was made to the wife of the purchaser.*
The wife of the purchaser, to whom the conveyance was made, occupied
no better position in respect to the reservation, than he would have held as
grantee, since she was a volunteer, and had, moreover, full notice of the
fact that the reservation was made.

4.  PERSONAL PROPERTY—*of plants reserved on a sale of land.* The writ-
ten reservation made the plants, as between the vendor and purchaser, and
the wife of the latter, personal property; as much so as if they had been
taken from the ground.

5.  TROVER—*conversion.* The vendor, within the time limited for the
purpose, sought to remove the plants according to the reservation, but the
grantee, the wife of the purchaser, the latter being absent, forbade him to
take them: *Held*, in an action of trover by the vendor against the hus-
band and wife, in answer to the objection that no conversion by the former
was shown, that inasmuch as the purchaser insisted the deed should be
made to his wife, and from her refusal of the plants, the jury might infer
he had the deed thus made to escape the obligation of his agreement, and
that in regard to the plants, she acted under his authority.

6. It might, moreover, well be held, that the mere fact of procuring the deed to be made to his wife, followed as this was by her claiming the plants, was, in itself, a technical conversion on his part, and as he thereby placed in his wife the title of the land where the plants were growing, she was the proper person on whom to make the demand.

APPEAL from the Court of Common Pleas of the City of Elgin; the Hon. RICHARD G. MONTONY, Judge, presiding.

The opinion states the case.

Messrs. WILCOX & BOTSFORD, and Mr. B. S. MORRIS, for the appellant.

Mr. CONSIDER H. WILLETT, for the appellees.

Mr. JUSTICE LAWRENCE delivered the opinion of the Court:

The appellant, Ring, on the 15th of August, 1867, sold to the defendant James Billings, his interest in a tract of land, the legal title of which was in one Felix, as a trustee for both parties, subject to the payment of certain sums of money. Ring and Billings executed a written agreement in the presence of Felix, by the terms of which, Billings was to pay the money secured on the land, and Ring was to have one year in which to remove certain wine plants that he was cultivating, amounting, as the evidence shows, to three thousand in number. Felix was verbally authorized by Ring to make the deed to Billings on the payment of the money. The wife of Billings was present at the making of this agreement, and was personally cognizant of its terms. The agreement was made in Kane county, where the land was situated. Billings subsequently went to Chicago to pay the money and procure the deed. Felix wished to make the deed to Billings, in accordance with the instructions of the parties when they were together, but Billings insisted it should be made to his wife, to which Felix finally consented, and it was thus executed.

Ring sent a man for the plants within the year, having continued to cultivate them during 1867. Billings was not at home, but his wife said Ring could not have them, and forbade his agent to take them. No question was made as to his being sent by Ring. On this state of facts Ring brought an action of trover against Billings and his wife. The court held the plants were a part of the realty, and that the action could not be maintained.

If Ring had conveyed the land to Billings without a written reservation of the plants, they would undoubtedly have passed with the lands, as we held in regard to trees in a nursery in *Smith* v. *Price*, 39 Ill. 29. But here there was a written reservation, and that made the plants, as between Ring and Billings, personal property, quite as much so as if they had been taken from the ground and stored in a cellar. The parties agreed they should be personal property, and Billings, having had the benefit of the agreement, can not now be permitted to escape its obligations. If Ring can not have this remedy for a very plain wrong, the same mode of reasoning would deny him any other. The fact that the deed contained no reservation is immaterial, as it was not made by Ring, nor did he authorize Felix to make it without the reservation. Whether Ring could set up his written reservation against a subsequent deed made by himself not containing the reservation, is a question unnecessary to be decided.

The wife of Billings occupies no better position than he would have held as grantee, since she is a volunteer, and had, moreover, full notice of the reservation. It is said the evidence shows no conversion on the part of Billings, as he was not at home when his wife refused the plants to Ring's agent. But we think, if the court had permitted the case to go to the jury, they might very properly have inferred from the fact that Billings insisted the deed should be made to his wife, and from her refusal of the plants, that he had the deed thus made with a view of escaping the obligation of his agreement, and that in regard to the plants, she acted under

his authority, the more especially as there is no evidence that he has ever in any way dissented from his wife's refusal, of which he could hardly have been uninformed, as they occupied the land together. It might, moreover, well be held, that the mere fact of procuring the deed to be made to his wife, followed as this was by her claiming the plants, was, in itself, a technical conversion on his part, and as he thereby placed in his wife the title of the land where the plants were growing, she was the proper person on whom to make the demand. He had given her an apparent title which she undertook wrongfully to assert.

For the error in withholding the case from the jury the judgment must be reversed and the cause remanded.

*Judgment reversed.*